Good morning. Stephen Mellon for the appellant, MFW Associates. Is it fair to say, just at the outset, that the very heart of this appeal is whether there was race judicata or not? Absolutely, Your Honor. Absolutely. The key issue here is race judicata, and the stakes are pretty high, since what we're asking is, did the plaintiff forfeit a $3.8 million contract claim against these two individual defendants, where, according to the district court at least, all other defenses have apparently been overcome. So it comes down to the race judicata. And we can break it down in two respects. First, was the issue of the defendant's personal liability actually litigated in the prior Vermont proceeding? And then the second question would be, assuming it wasn't, should it have been? Okay. So the first part of that I think is pretty straightforward. The key pleading, as you know, is the supplemental complaint that was filed as part of this foreclosure case in Vermont. The foreclosure proceeding itself was not against these two individuals. It was against the entity they controlled, Snowdance, LLC. So we — this comes down to count one of the supplemental complaint, the breach of contract claim. They were named as defendants, though, right? Pardon? They were named as defendants. In the supplemental complaint, they were added in. And count one, which is the breach of contract claim, we think makes a pretty straightforward distinction. There's a paragraph, paragraph 24, that says Snowdance, LLC, the foreclosure debtor, is in breach of amendment number one and the forbearance agreement. In other words, Snowdance — But paragraph 25. Yes. And then after — You want to read that one, too? Yes, I do. Because after 24 says Snowdance is in breach of the — owes the underlying debt, then paragraph 25 says guarantors, which includes these two defendants, are in breach of their pledge agreements, which say simply that you pledge your membership interests in the company as security for the underlying debt. So paragraph 25 doesn't say they're in breach of the forbearance agreement. It doesn't say they owe the underlying debt. It says they're in breach of their pledge agreements. And, in fact, the very first paragraph of the supplemental complaint, paragraph 1, says this is an action to foreclose upon the membership interests. So our construction is, count one for breach of contract says that Mr. and Mrs. Plowsteiner have breached the pledge agreements, they need to turn over their membership interests in the company. It does not say anywhere in the text that the Plowsteiners owe the underlying debt. So we think with — But they're brought in as guarantors. They're brought in as guarantors because in the pledge agreement, they're identified as guarantors. It's them and three other entities they control, which have guaranteed to the extent of the pledge agreement. They were originally guarantors on the original loan that happened way back when. This was essentially redone into a new agreement, the admitted forbearance agreement, which we contend made them no longer guarantors. They're now jointly and severally liable. But they also guarantee it in the form of the separate pledge agreement that pledges their membership interests. But on the AFA itself, and this is the contract issue that was resolved in our favor, they're jointly and severally liable. And count one, the breach of contract claim did not seek to sue them under that joint and sever liability. It's solely — Is this a question of Vermont law as to whether when you have that situation, you essentially have to bring every claim you can against guarantors? Well, I think there's a question of Vermont law as to whether you have to bring your deficiency judgment claim in the same action, which is what we look at if we get into count three of the supplemental complaint. I think that there's no suggestion that's been made here that under Vermont rules of compulsory joinder that there's a rule that says you have to bring it in. I think the important fact is this supplemental complaint is not a stand-alone action where we look at, well, you sued these people. Now are you going to bring every related claim you've got, should you do it here on good conscience? It's part of a much larger foreclosure proceeding. And so if we say you have to bring all claims you've got against these two people whose membership interests you're trying to foreclose on, you have to bring everything, including the breach of contract claim, it's going to have implications beyond this case. Because a foreclosure plaintiff — Could I just ask you — Yes. You say the pledge agreement is limited, doesn't provide for the guarantees of the underlying debt. That seems to be your argument, right? So that this was limited in count one to just that part of their responsibility. But in paragraph 19, it says that in each pledge agreement, each guarantor guaranteed the underlying debt of Snowdance. So how is that not to include their own personal liability for the debt, not just the other provisions of the pledge agreement? Well, it does recite the terms. You're correct. But in the actual charging allegations count one, the breach of contract claim, it doesn't say we're seeking to enforce that joint and several liability against the individuals. The guarantors are in breach of their pledge agreements? How could that not be construed to their personal liability? The pledge agreements — The underlying debt. Right. The pledge agreements say they pledge their membership interests as security for the underlying debt. But it also says under each of the pledge agreements, they guaranteed the underlying debt of Snowdance. Is that — that's paragraph 19 on A118. Your Honor, I'm afraid I don't — I don't see the language you're citing to. It's — It's okay. Paragraph 19, the — The — the — yes, it says the — Let me just read it so I'm clear. In each pledge agreement, this is the third line down, each guarantor — and those are the Plosteiners, you agree with that? Yes. Guaranteed the underlying debt of Snowdance, right? Right. That's not a — And then count one, the breach of amendment, paragraph 25 says, by failing to pay when due, guarantors are in breach of their pledge agreements. Right. That's not — to be clear, that's not a quote in paragraph 19. That's — that's a characterization. And what it's intended to convey is that —  The — what it's — It's a description. Right. It's describing what the pledge agreements do. And the pledge agreements guarantee the underlying debt to the extent of the membership interest. If we didn't have an amended forbearance agreement, if all we had was the pledge agreements, which say, here, I pledge my membership interest, and we tried to hold up that agreement and say, you owe the underlying debt pursuant to that agreement, you won't find anything in that agreement that says so, and we don't contend there is. So there's no claim in count one, we suggest, with regard to the underlying debt owed by them. So when we talk about whether the full claim should have been brought against the individuals as part of count one, we're talking about whether a foreclosure plaintiff, who necessarily needs the ability to bring in new parties for specific limited purposes, like foreclosing on one particular asset, an interest in one particular piece of property, we would take away that option from — from foreclosure plaintiffs everywhere if we say, well, to bring in a party and foreclose on one piece of property, you've got to bring every related claim you have against that party or — or lose it forever. We're talking about a case here that was originally filed in 2007. It was taken over by MFW in 2009 or 2010. It didn't result in a foreclosure judgment in 2013. Frankly, this was not a case that needed to be made more complicated by anyone. To have a separate trial on this issue of personal liability, which is an issue it took us, you know, a whole case to litigate here, I think was — was not required. And to impose that requirement on every foreclosure plaintiff, I think, would make a mess of foreclosure proceedings that are already complex enough. Sotomayor. Isn't the relatively simple answer to this, under Vermont law, you want to foreclose — you want to bring a foreclosure action in order to get rid of the interest or to have confirmed, since it's a title state. The — your title in the — in the subject property, do it and stop there. Don't add — don't look for a deficiency judgment. Don't add in guarantors. Just get your foreclosure judgment, confirm that, and then do whatever else you want in a separate action. Well, I — Then you're not going to be a — not stop. You're not going to have Reyes-Judicata argued to you that your foreclosure action against the company, the owner of the property, whose title you now want, bars you from doing anything else you want to do against the guarantors. Well, I — I would agree. But also, under Vermont law, we have the Lafar decision from the Vermont Supreme Court, which says that the foreclosure action and deficiency judgment action are distinct for Reyes-Judicata purposes, and the deficiency judgment claim doesn't become ripe until you've obtained the — until you've determined the amount of the deficiency. So I think Vermont law gives you the option up until the point that — But then by stipulation, didn't you determine the deficiency? Or am I misunderstanding? No. The deficiency was not determined until 2013 when the sale happened. What happened with the stipulation is — Because it was a judicial sale that you sought. And it was a single piece of property that was sold for $100. But we still had the entire ski resort to be liquidated, a foreclosure sale, which was another, as it turns out, a million and a half. But you certainly couldn't have taken a deficiency judgment back in 2011 based on the sale of this $100 of membership interest. You still had the entire resort. I see my time is up. So I thank the Court for its time. Not at all. And you have not reserved time for rebuttal. So we'll hear from Ms. Goel. Thank you, Your Honors. Good morning. Coming from sunny Vermont. If we had the snow that we have today, we wouldn't even be here because the resort would be operable. My name is Carolyn Cole. I represent Susan and Stephen Plausteiner. In finding that, quote, "'Race Judicata' does bar this lawsuit because the supplemental complaint actually brought, and in any event certainly could and should have contemporaneously been brought, brought claims against the Plausteiners for breach of the AFA, the district court applied the correct legal standards to the facts. The district court's decision should be affirmed.' Now, my opponent makes a myriad of arguments as to why Race Judicata shouldn't apply, but none are availing. I want to address the point he made just now, and that is that the supplemental complaint only sued the Plausteiners for breach of the pledge agreement and not for breach of the AFA. Let's first point out one very simple thing. The supplemental complaint was a hybrid action. It sued the Plausteiners, because they were defendants named in the action, for count one entitled breach of the AFA. It sought personal jurisdiction over them, and as well it sought a deficiency action. So LeFar doesn't apply. The Costello case and the Senlar case applies, that when a foreclosure and a breach of contract action are brought in one action and that is dismissed, you can't later come back and sue for breach of contract, unlike LeFar. The ---- Roberts. I hear your opponent, your Mr. Mellon, arguing, though, and please set me straight, that he is trying to tease out a distinction between essentially a foreclosure of whatever interest they had that supported the guarantee, and I see breach of amendment number one obviously pleaded here, that they weren't seeking money from them or a deficiency from them and they couldn't do that. I would love to address that. Please do. That's why I sort of set it up. Let's start with the facts here. Count one brought a claim for breach of the AFA and named the defendants, the Plausteiners. Right. The remedy they sought was compensatory damages, and in fact, they did not distinguish between the defendants in the analysis of whether the defendants were in breach of their obligations. That's in the relief section of the complaint. Number two, let's look at what MFW believed it was doing. Following the supplemental complaint, it brought a summary judgment motion, and it sought to sue the Plausteiners as debtors, which is what is at issue here, as debtors, because they were guarantors who were, quote, "...jointly and severally liable for the entire debt arising out of the AFA." And you'll find this at Appendix 470 to 471, and this is the summary judgment motion that seeks the relief you just identified. Correct, Your Honor, and this is exactly what MFW is seeking. Quote, "...amendment number one makes clear that Snowdance, LLC, the Plausteiners and the other entities, are jointly and severally liable. The first paragraph defines all of the individuals and entities together as, quote, the debtor. By failing to make the $850,000 payment by October 1, 2009, as amendment one requires, debtors became liable not only for that amount, but for the entire outstanding debt. See amendment number one, section 5." And that's at 47471. So to the point where my opponent says that they weren't seeking to hold the Plausteiners personally liable as they are today for the entire outstanding debt, they indeed did, by their own words. But let's look at what Vermont law says. Race judicata applies to claims that could or should have been brought based on the same transaction or occurrence. Under the Vermont occurrence transaction test in the Faulkner case, MFW is required to, quote, "...address in one lawsuit all injuries emanating from all or any part of the transaction or series of connected transactions out of which the complaint arose." Now, the supplemental complaint itself makes clear that the pledge agreements were part and parcel of the AFA. And this is what it says at 118 of the appendix. Quote, "...in connection with amendment number one to the forbearance agreement, the guarantors, defined as the Plausteiners, each executed a pledge agreement in favor of MFW of their respective equity interests in Snowdance LLC. In each pledge agreement, each guarantor guaranteed the underlying debt." So it is very clear that under the transaction occurrence test, the pledge agreements and the AFA action were part and parcel of the same thing. Now, could or should, even if they didn't, if we assume his argument to be true that they didn't sue the Plausteiners under the AFA, which is contradicting the plain language of the document, but even if they didn't, could they or should they have sued the Plausteiners? Well, of course they could have, should have. And how do we know? Because we're here today doing the very same thing. So if they could have done it today, they can do it today. They could have done it back then. But we have to take MFW at its own word when they say to Judge Cohen of the Vermont Supreme Superior Court that we are seeking liability under the AFA for the Plausteiners. I think that we should take them at their word. My opponent also argued the stipulation, the consideration for the stipulation for discharging the Plausteiners personally in the joint stipulation. Thank you, Your Honor. What was the consideration for that? It seems like it was just that, the ski lift. That was a big part of it. Now, the Plausteiners were not only there under the joint stipulation, but they were unsecured creditors. And so they had a very big problem with liquidating piecemeal the assets, especially the most valuable asset of the ski area, which was the chairlift. It was over a million dollars. And if you took away the main chairlift, the quad, you would have a denuded ski area. So they objected to it. That's generally the case, isn't it? There it is. And they objected vociferously to it. And at the end of the day, they gave up their rights to object to this piecemeal liquidation of the ski area assets, in return for which MFW dismissed the supplemental complaint in its entirety. That was a big deal because at the end of the day, there wasn't going to be a lot of value to that ski area. And the unsecured creditors were going to be left high and dry. So the only value was the quad ski lift? The only value? Well, the value of the ski lift was about $1.3 million. So, yes. Because the stipulation is a joint stipulation regarding the motion to sell the lift. That's right. And in paragraph three of the joint stipulation, it is to say. So my question is, why would MFW give up all its ability to sue the Plost Diners personally just for that ski lift when there was a lot of other assets? Because MFW was ultimately going to end up with the escrow funds for the ski lift. They ended up with that and, as well, the land under which the ski area was built. So they ended up with basically all the real property and the escrow funds from the sale of the ski lift. But not in connection with this stipulation? Yes, in connection with that stipulation. It covered all those other assets, too? No. The foreclosure action in 2013 ultimately resulted in a judgment in favor of MFW. I know. I'm just saying with this joint stipulation, the only asset that's described is that lift, right? In the joint stipulation? Yes. But it was the most valuable asset of the ski area. And they were on track to complete the foreclosure, which gave them the underlying property. That's correct. The foreclosure proceeding was apart and separate from the supplemental complaint. And I'd like to just briefly address that. The fact that the foreclosure action was allowed to continue after the supplemental complaint was dismissed was simply because the foreclosure action was brought on the note and the mortgage being in default. From back in 2005, that was when those instruments were drafted. This is a little bit like a bankruptcy procedure. A bankruptcy proceeding goes on despite the fact that the adversary proceedings might have been adjudicated or dismissed. That is why the foreclosure action was allowed to continue and proceed absent any reference to the supplemental complaint. And in fact, just so we're clear, the Plow Centers weren't even defendants in the foreclosure action. Right. Because they weren't the company. That's correct. That held the land. That's correct. I see my time is up unless there are other questions. Thank you. Thank you both. Your Honor, may I quickly leave just to address the last question that was asked with regard to the consideration for the agreement? Because I do think there's a clear answer in the record. Can I just direct the Court? Sure. That would be helpful. Just very briefly. This is addressed at page 16 of our reply. It's Appendix 733. There's a decision from the Vermont Court dated November 1 of 2013 where the Court clearly sets forth its view of what the consideration was in that joint stipulation. And it characterized it as Snowdance Realty dropped its objections to the sale of that ski lift in exchange for first priority to the sale proceeds, which otherwise it wouldn't have gotten as a contractual matter. They got first priority on the $1.5 million. So that was, in the Court's view, the bargain for exchange that happened. Thank you.